


IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION




| | | |
|---|---|---|
| **GRACE NUNEZ and JUAN NUNEZ, Individually and as representatives of the ESTATE OF JOHN NUNEZ, III and LISA HERNANDEZ,** | § | |
| **Plaintiffs.** | § | **Civil Action No.: 2-06CV-363-J** |
| vs. | § | **JURY TRIAL DEMANDED** |
| **THE CITY OF LUBBOCK; OFFICER MATT DOHERTY, in his individual and official capacity; and TASER, INTERNATIONAL, INC.,** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**COME NOW** Plaintiffs GRACE NUNEZ, individually, and as Representative of the Estate of JOHN NUNEZ III, JUAN NUNEZ, individually, and as Representative of the Estate of JOHN NUNEZ, III, and LISA HERNANDEZ, by and through their counsel, Kevin Glasheen, of the Law Offices of Kevin Glasheen, L.L.P., complaining against defendants, and allege as follows:

## NATURE OF THE ACTION

1. This is a civil rights and wrongful death action for money damages arising under the Constitution of the United States, particularly the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the laws of the State of Texas, resulting from

the wrongful death of John Nunez III, Decedent, as a result of the conduct of the Lubbock Police Department, its police officers, employees, and agents.

## DEMAND FOR JURY TRIAL

2. Plaintiffs demand a jury trial.

## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

## VENUE

4. Venue is proper under 28 U.S.C. § 1391. This Court should exercise its discretion to maintain this action in the Amarillo Division of the Northern District of Texas for the following reasons:

a. This case involves questions of significant public interest. Questions regarding law enforcement organizations' use of force policies—particularly involving the use of Taser devices—are currently being debated throughout the nation. The case at hand has itself been the focus of much debate in the City of Lubbock and Lubbock County.

b. The Defendant City of Lubbock has refused to produce the audio recording of the encounter between the Decedent, John Nunez III, and Officer Matt Doherty, citing concerns about pretrial publicity. The Defendants have requested the Plaintiffs accept a non-disclosure agreement before the Defendants will produce evidence in this case, and have specifically asked for non-disclosure to the media. While Plaintiffs' counsel is mindful of Rule 3.07 of the TEXAS RULES OF PROFESSIONAL CONDUCT regarding trial publicity, the comments to the rule also note:

> The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.

The Plaintiffs support this right of the public to know as they strongly believe that, in the interest of justice, it is more important this case result in policy change that will protect the constitutional rights of the citizens of their community, than in money damages being paid.

c. Therefore, by maintaining this action in the Amarillo Division, this Court will have the unique ability to balance these competing interests by maintaining an impartial jury pool while accommodating the public's interest in the matter.

## PARTIES

5. JOHN NUNEZ III, was at all material times a resident of Lubbock, Texas, and of full age.

6. Plaintiff GRACE NUNEZ, a resident of the County of Lubbock, State of Texas, brings this action in plaintiff's individual capacity as the surviving mother and heir of JOHN NUNEZ III, Decedent, and as the personal representative of the estate of JOHN NUNEZ III.

7. Plaintiff JUAN NUNEZ, a resident of the County of Lubbock, State of Texas, brings this action in plaintiff's individual capacity as the surviving father and heir of JOHN NUNEZ III, Decedent, and as the personal representative of the estate of JOHN NUNEZ III.

8. Plaintiff LISA HERNANDEZ, a resident of the County of Lubbock, State of

Texas, brings this action in plaintiff's individual capacity.

9. Defendant MATT DOHERTY is a police officer of defendant City of Lubbock. Defendant MATT DOHERTY is, and at all times mentioned in this complaint was, a resident of the County of Lubbock, State of Texas.

10. Defendant CITY of LUBBOCK, Texas, is incorporated as a home rule municipality and is the public employer of the said officer.

11. Defendant TASER INTERNATIONAL, INC. ("TASER"), is a corporation that is incorporated under the laws of the State of Delaware. Defendant has its principal place of business in the State of Arizona. Service of process on defendant may be made according to the laws of the State of Texas by serving the Secretary of State of the State of Texas, in accordance with TEXAS CIVIL PRACTICES AND REMEDIES CODE § 17.044(b), at the following address:

Office of the Secretary of State
Statutory Documents Section – Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

The Secretary of State shall then forward a copy of the process to defendant TASER at the following address:

TASER INTERNATIONAL, INC.
17800 N. 85TH ST.
SCOTTSDALE, AZ 85255

## CONDITIONS PRECEDENT

12. All conditions precedent have been performed or have occurred.

## FACTS

13. At all times relevant to the acts alleged in this complaint, Defendant Matt Doherty was acting under the color of the statutes, ordinances, regulations, customs, and usages of

defendant City of Lubbock and the State of Texas and under the authority of his respective office as a police officer.

14. On Easter Sunday, April 16, 2006, Officer Matt Doherty, a police officer employed by the City of Lubbock, responded to a 911 hang-up call at 4402 Jarvis Avenue in Lubbock, Lubbock County, Texas, the residence of Grace and Juan Nunez. At the time that Officer Doherty responded to the call he was equipped with a Taser Model X26 Conductive Energy Device (Taser) which had been furnished to him by the City of Lubbock Police Department.

15. Officer Doherty arrived at the Nunez residence at approximately 10:50 p.m. Upon his arrival, he was met by Lisa Hernandez, daughter of Grace and Juan Nunez, who spoke to the Officer outside of the residence. Ms. Hernandez explained that she had called 911 because she was concerned about her parents, who had been arguing. She explained to the Officer that her father, Juan Nunez, had left the residence prior to the Officer's arrival, and reassured the Officer that everyone was fine. She assured the Officer that there had been no physical altercation and the family no longer needed his assistance.

16. Upon hearing this, Officer Doherty responded that he wanted to check things out inside the residence just to verify that everything was alright. Lisa Hernandez walked the Officer to the front door, where the Officer was greeted by John Nunez III, and Grace Nunez. John Nunez III, invited Officer Doherty to come inside the residence. Officer Doherty abruptly directed Mr. Nunez to come out of the house, and began pointing his Taser at him. Mr. Nunez did not immediately comply, but instead, confused, asked the Officer again to come into the residence. When Mr. Nunez failed to immediately comply with the Officer's direction, Officer Doherty fired his Taser X26 device directly into the left side of Mr. Nunez's chest from a

distance of about three feet.

17. After being shocked once with the Taser, Mr. Nunez fell to the ground unconscious. Officer Doherty instructed the unconscious Mr. Nunez to roll over so he could be handcuffed. When Mr. Nunez did not roll over, Officer Doherty continued to shock him with the Taser, firing three additional bursts of electricity into Mr. Nunez's chest.

18. Grace Nunez, the mother of John Nunez III and Lisa Hernandez, Mr. Nunez's sister, begged the Officer not to shock him again and to call for help. Both Grace Nunez and Lisa Hernandez pleaded with the Officer to check Mr. Nunez's pulse, but received no response. Grace Nunez approached her unconscious son with the intent of performing CPR but was instructed by Officer Doherty to back away. After some time, emergency medical personnel were summoned, and tried to restart Mr. Nunez's heart, but were unable to do so. Mr. Nunez was pronounced dead.

19. At no time during the events described above was John Nunez III armed with any weapon, or a threat to the safety of himself or others. He had not committed any criminal offenses.

20. The Defendant Officer Matt Doherty had no warrant for the arrest of John Nunez III, no probable cause for his arrest, and no legal cause or excuse to seize the person of Mr. Nunez.

21. At all times relevant to the events described above, the City of Lubbock Police Department had a policy and/or custom in place that enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals. These policies and/or customs include tolerating misconduct by its police officers; encouraging misconduct by failing to adequately supervise, discipline, or train; and failing to adapt and amend current use-of-force

procedures according to warnings issued by the manufacturer of the Taser device, and in accordance with guidelines and studies issued by the United States Department of Justice and other organizations so as to avoid the continued violation of citizens' constitutional rights.

22. At all times relevant to the events described above, Defendant TASER was the manufacturer and distributor of the Taser X26 Conductive Energy Device, which caused the death of John Nunez III.

23. As a direct and proximate result of the said acts of the defendants, the injuries and damages suffered by Decedent JOHN NUNEZ III were significant, substantial, and severe, and are as follows:

a. Violation of his constitutional rights under the Fourth and Fourteenth Amendents to the United States Constitution to be free from an unreasonable search and seizure of his person;

b. Violation of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive, unreasonable, and unjustified force against his person;

c. Violation of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from deliberate indifference to his serious medical needs arising as a result of the actions of a government agency and/or its agent;

d. Pain and mental anguish, including conscious physical pain and emotional pain, torment, and suffering experienced before his death as a result of the occurrence in question; and

e. Loss of his life.

24. As a direct and proximate result of the said acts of the defendants, the injuries and damages suffered by Plaintiff JUAN NUNEZ were significant, substantial, and severe, and are as follows:

a. Emotional trauma and suffering resulting from the untimely end of his relationship with his son, with the corresponding loss of society, love, comfort, companionship, financial support, emotional support, and support services of the Decedent John Nunez III; and

b. Expenses incurred for the funeral and burial of the Decedent.

25. As a direct and proximate result of the said acts of the defendants, the injuries and damages suffered by Plaintiff GRACE NUNEZ were significant, substantial, and severe, and are as follows:

a. Emotional trauma and suffering resulting from the untimely end of her relationship with her son, with the corresponding loss of society, love, comfort, companionship, financial support, emotional support, and support services of the Decedent John Nunez III;

b. Mental anguish, pain and suffering in the past and which will, in all likelihood, be experienced in the future resulting from her relationship with Decedent coupled with her close proximity to and contemporaneous perception of his fatal injury and death; and

c. Expenses incurred for the funeral and burial of the Decedent.

26. As a direct and proximate result of the said acts of the defendants, the injuries and damages suffered by Plaintiff LISA HERNANDEZ were significant, substantial, and severe as she suffered mental anguish, pain and suffering in the past and will, in all likelihood, experience

it in the future resulting from her relationship with Decedent coupled with her close proximity to and contemporaneous perception of his fatal injury and death.

**COUNT I – 42 U.S.C. § 1983 Against Individual Defendant MATT DOHERTY**

27. Plaintiffs here repeat and reallege the allegations contained in paragraphs 1 through 26 as though fully set forth herein by reference.

28. Defendant MATT DOHERTY, acting under color of law, deprived Decedent and Plaintiffs of certain constitutionally protected rights wherein Defendant:

a. Made an unlawful and unreasonable seizure of the Decedent's person;

b. Used excessive and unreasonable force to accomplish this unlawful seizure; and

c. Acted with deliberate indifference to the serious medical needs of Decedent after repeatedly "tasing" him despite his being unconscious, delaying in ascertaining the gravity of Decedent's medical needs despite his nonresponsiveness, delaying in requesting medical attention, and not allowing family members to offer immediate medical assistance.

29. Defendant MATT DOHERTY acted willfully, deliberately, maliciously, or with reckless disregard for Decedent's and Plaintiffs' clearly established constitutional rights.

**COUNT II – 42 U.S.C. § 1983 Against Defendant City of Lubbock**

30. Plaintiffs here repeat and reallege the allegations contained in paragraphs 1 through 26 as though fully set forth herein by reference.

31. Defendant City has established policies and procedures for its Police Department regarding the use of force, and regarding the provision of medical service to prisoners and

detainees.

32. In establishing these procedures, Defendant City had a duty under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that created a substantial likelihood that citizens would be subjected to unlawful seizures of their person and/or the use of excessive force by Defendant City's Police Department officers, or policies and procedures which created a substantial likelihood that the serious medical needs of citizens seized by the Police Department would be treated with reckless indifference by its officers, agents, and employees employed by Defendant City's Police Department.

33. Notwithstanding its mentioned duties, Defendant City was guilty of one or more of the following wrongful acts or omissions to act in violation of the Decedent's and Plaintiffs' constitutional rights, in that it:

a. Allowed policies and procedures to continue in force and effect which resulted in the use of outrageous and excessive force against Decedent;

b. Had a custom and practice of failing to independently and adequately investigate complaints of excessive force;

c. Had a custom and practice of failing to effectively discipline or retrain police officers who wrongfully utilized excessive force;

d. Failed to establish appropriate policies and procedures to address and correct the repeated use of excessive force by police officers in use of Tasers; and

e. Failed to establish appropriate polices and procedures to protect detainees who had sustained injury from the reckless indifference and/or excessive force of Defendant City's agents, servants, and employees in its Police Department to their serious medical

needs.

34. As a direct and proximate result of one or more of Defendant City's wrongful acts or omissions to act, the Decedent and Plaintiffs sustained a violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

35. Defendant City acted willfully, deliberately, maliciously, or with reckless disregard for Decedent's and Plaintiffs' clearly established constitutional rights.

**COUNT III – Negligent Design State Tort Claim Against Defendant TASER**

36. Plaintiffs here repeat and reallege the allegations contained in paragraphs 1 through 26 as though fully set forth herein by reference.

37. The design of the Taser Model X26 is defective in that it is capable of providing, and does provide to the subject an electrical shock which is capable of causing death or serious bodily injury, rather than a non-lethal and non-harmful shock which the unit is advertised to provide.

38. The condition of the Taser X26, as designed, is unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use. Additional safer alternative designs exist that, in reasonable probability, would have prevented or significantly reduced the risk of the injury in question without substantially impairing the product's utility, and was economically and technologically feasible at the time the product left the control of Defendant TASER by the application of existing or reasonably achievable scientific knowledge.

39. The design defects of the Taser X26 were producing causes of the injuries in question and the damages of the plaintiffs as described above.

**COUNT IV – Negligent Marketing State Tort Claim Against Defendant TASER**

40. Plaintiffs here repeat and reallege the allegations contained in paragraphs 1 through 26 as though fully set forth herein by reference.

41. Pleading additionally, and in the alternative, the death of John Nunez III was contributed to by marketing defects of the Taser X26, in that the product lacked proper warnings and instructions for the end user.

42. Defendant TASER advertises its product extensively through advertising literature, over the internet at www.taser.com, and through various promotional literature. Defendant TASER advertises its product as "non-lethal," and promotes the "safety" of its product, when the product is neither "non-lethal" nor "safe."

43. Additionally, Defendant TASER fails to provide crucial warnings or instructions to the targeted users of the Taser X26, of the following:

a. That the Taser is capable of causing death or serious bodily injury, and its use should be avoided when other non-lethal or non-injurious responses of the officer are capable of achieving the desired effect;

b. That the Taser should not be used against persons who are passive, but only against persons who are actively resisting or exhibiting active aggression, or to prevent individuals from harming themselves or others;

c. That multiple applications and continuous cycling of the Taser X26 are likely to increase the risk of death or serious bodily injury and should be avoided;

d. That the use of the Taser X26 entails significant risk of serious bodily injury or death when the victim of a Taser attack falls to the ground striking his head;

e. That using a Taser X26 directly on the chest of an individual from a short

range increases the risk of death or serious bodily injury and should be avoided;

f. That using a Taser X26 on probe mode delivers a substantially higher electrical shock, in a more dangerous manner, and should be avoided when the user is at close range to the victim and use of the Taser in the contact mode is practical; and,

g. That application of an electrical shock by means of the Taser X26 is likely to cause or may cause depressed respiration or cessation of breathing, especially in victims who are under the influence of alcohol, and greater care should be taken to avoid using the Taser X26 on individuals who are otherwise likely to be at increased risk of death or asphyxiation, or who are under the influence of alcohol, and care should be taken to monitor and provide emergency aid to individuals who have been shocked with a Taser X26 to prevent asphyxiation.

44. Defendant TASER failed to give adequate warnings of the dangers of the Taser X26 that were known to Defendant TASER, or, in the application of reasonably developed human skill and foresight should have been known, and failed to give adequate instructions to avoid such dangers, which rendered the product unreasonably dangerous as marketed.

45. The inadequacy of the warnings and instructions and the resulting marketing defect was a producing cause of the injuries in question and the damages of the Plaintiffs as more fully set forth below.

**COUNT V – Negligent Misrepresentation State Tort Claim Against Defendant TASER**

46. Plaintiffs here repeat and reallege the allegations contained in paragraphs 1 through 26 as though fully set forth herein by reference.

47. Pleading additionally, and in the alternative, the death of John Nunez III was contributed to by misrepresentations on the part of Defendant TASER of the Taser X26, which

are actionable under Texas law.

48. Defendant TASER advertises its product extensively through advertising literature, over the internet at www.taser.com, and through various promotional literature. Defendant TASER advertises its product as "non-lethal," and promotes the "safety" of its product, while relying on inadequate and faulty research to make those claims.

49. Contrary to the representations of Defendant TASER, the Taser X26 is not a "non-lethal" or "safe" incapacitation device, but rather possesses substantial capacity for causing death or serious bodily injury to the individual upon whom it is used. Tasers have resulted in over 156 deaths in the last five years.

50. The representations of the safety of the Taser X26 involved material facts concerning the character or quality of the device, and the law enforcement entities, including the City of Lubbock Police Department, relied on the representations made by Defendant TASER in purchasing the device in question.

51. The misrepresentations were a producing cause of the injuries in question and the damages of the Plaintiffs as more fully set forth below.

## EXEMPLARY DAMAGES AGAINST DEFENDANT TASER

52. When viewed objectively from the standpoint of Defendant TASER at the time of the occurrence, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. In addition, TASER was actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, which constitutes "gross neglect" pursuant to §41.001(7)(B) TEXAS CIVIL PRACTICE AND REMEDIES CODE. Therefore, pursuant to Section 26,

Article XVI, Texas Constitution as defined by §41.003(b), TEXAS CIVIL PRACTICES AND REMEDIES CODE, Plaintiffs GRACE NUNEZ, LISA HERNANDEZ, and the Estate of JOHN NUNEZ III seek exemplary damages in an amount which is reasonable and just as determined by the jury.

53. As a direct, proximate, and producing result of the Defendant TASER's gross negligence, Plaintiffs LISA HERNANDEZ, GRACE NUNEZ, and the Estate of JOHN NUNEZ III are entitled to exemplary damages pursuant to Section 41.001 et. seq. of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

## ATTORNEY FEES

54. It was necessary for Plaintiffs to hire the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## PRAYER FOR RELIEF

55. For the reasons stated above, Plaintiffs individually ask for judgment against Defendants for the following:

a. Actual damages in an amount to be proved at trial;

b. Punitive damages in an amount deemed appropriate to punish those Defendants lawfully susceptible to punitive damages;

c. Exemplary damages against Defendant TASER as set forth above and as determined by the jury;

d. Prejudgment and postjudgment interest;

e. Costs of suit, including attorney fees; and

f. All other, further and different relief as this Court deems just and proper.

**DATED this 22ND day of December, 2006.**

Respectfully submitted,

By: KG

THE LAW OFFICES OF KEVIN GLASHEEN, L.L.P.
KEVIN GLASHEEN
State Bar No. 08001510
1302 Texas Ave. (79401)
P.O. Box 1976
Lubbock, Texas 79408
Telephone: (806) 741-0284
Facsimile: (806) 763-2146

ATTORNEYS FOR THE PLAINTIFFS